# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **Jeff Dye, Tammie Erskine,** **Patrick Hall, and Eric Perttunen,** | **Civil Action #**_____ |
| | **Judge** _____ |
| **Plaintiffs,** | <u>**COMPLAINT AND**</u> <u>**JURY DEMAND**</u> |
| v | |
| **Michigan Department of Agriculture - Office of the Racing Commission, Christine White, individually and in her official capacity as Racing Commissioner, and Gary Post, individually and in his official capacity as Deputy Commissioner,** | |
| **Defendants.** | |

_____/

Lisa C. Ward (P38933)
Attorney For Plaintiffs
2164 University Park Drive
Suite 260F
Okemos, Michigan  48864
(517) 347-8100

_____/

## COMPLAINT

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

NOW COME Plaintiffs, Jeff Dye, et al, (hereinafter "Plaintiffs") by and through their Attorney, Lisa C. Ward, and for their complaint state as follows:

**JURISDICTION, VENUE, AND PARTIES**

1. This is a civil action brought pursuant to 42 USC 1983 seeking declaratory and injunctive relief and money damages against Defendants for retaliatory actions, under color of law, in violation of the First and Fourteenth Amendments to the U.S. Constitution.

2. The jurisdiction of this court is invoked pursuant to 28 USC 1331, 1343(a)(3), and 1343(a)(4). Jurisdiction for the declaratory relief sought is also premised upon 28 USC 2201 and 2202. Venue lies in the Eastern District of Michigan pursuant to 28 USC 1391(b).

3. Plaintiffs are citizens of the United States and residents of Flushing, Michigan; Saginaw, Michigan; Williamston, Michigan; and Royal Oak, Michigan, respectively and all located within the Eastern District of Michigan.

4. Defendant Department of the Racing Commission (hereinfter Defendant Department) is a municipal corporation organized and existing under the constitution and laws of the State of Michigan.

5. Defendant Christine White and was at all relevant times duly appointed Commissioner of Defendant Department. Defendant White has recently resigned in order to take another appointment.

6. Defendant Gary Post is and was at all relevant times duly appointed Deputy Commissioner of Defendant Department.

7. The amount in controversy exceeds $25,000, exclusive of costs, interest and attorney fees.

8. The events giving rise to this cause of action occurred in Ingham County, Michigan.

## COMMON ALLEGATIONS

9. Plaintiffs incorporate by reference paragraphs 1 through 8, as though fully restated herein.

10. Plaintiffs were appointed to their positions as State Stewards by the Commissioner of the Department of the Racing Commission:

    a. Plaintiff Pat Hall was first appointed Assistant State Steward on March 17, 1980 and was paid a per diem rate of $100.00 at that time. (See Exhibit 1)

    b. Plaintiff Jeff Dye was first appointed State Steward and Special Deputy for Defendant Department on April 22, 1988 and was paid a per diem rate of $200.00 at that time. (See Exhibit 2)

    c. Plaintiff Eric O. Perttunen was first appointed State Steward and Special Deputy on March 22, 1994 and was paid a per diem rate of $200.00 at that time. (See Exhibit 3)

    d. Plaintiff Tammie Erskine was first appointed State Steward and Special Deputy on August 22, 1999 and was paid a per diem rate of $244.00 at that time. (See Exhibit 4)

11. Defendant Christine White, in her capacity as Commissioner of the Office of the Racing Commission, was appointed to her office as Acting Commissioner on or about August 31, 2005.

12. Defendant Gary Post, in his capacity as Deputy Commissioner of the Office of the Racing Commission, was appointed to his office as Deputy Commissioner on or about October, 2006.

13. Plaintiff Dye was employed as an Administrative Liaison Steward from June, 1990, until December 31, 2006, when his contract was not renewed and he was reinstated as a State Steward.

14. Plaintiffs have signed new contracts every year stating their position and per diem rates.

15. Plaintiffs were designated as Special Personnel Service (SPS) employees whose salaries were paid by the State of Michigan.

16. Plaintiffs are precluded from filing a grievance with the Civil Service Commission of the State of Michigan due to their status as SPS employees.

17. Plaintiffs received "bank" time, which was similar to comp time, in lieu of other basic benefits as their status as SPS employees did not qualify for other benefits. "Bank" time benefits had been in place for thirteen years and had been approved by the State of Michigan, Department of Personnel.

## COUNT I
## VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHTS TO FREE SPEECH AS GUARANTEED BY THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND 42 USC 1983

18. Plaintiffs incorporate by reference paragraphs 1 through 17, as though fully restated herein.

19. The First Amendment of the U.S. Constitution guarantees individuals the right to free speech, of which political speech is highly protected. 42 USC 1983 shields persons against discrimination by state actors based on the rights guaranteed by the United States Constitution.

20. Plaintiffs privately endorsed Dick De Vos as candidate for governor in the November, 2006 elections.

21. Defendants White and Post, acting in their individual capacity and in their official capacity as officers of the State of Michigan, suppressed Plaintiffs exercise of free speech, mainly political speech.

22. On or about October, 2006, Defendant Post met with Plaintiffs Perttunen and Dye and others and informed them that Jennifer Granholm, another candidate for governor in the November, 2006 gubernatorial race, was the "way to go" and that Dick DeVos was "not the way to go."

23. In the same meeting, Defendant Post accused Plaintiffs Erskine and Hall of influencing people to vote for Dick DeVos so that Defendant White would be replaced as Racing Commissioner.

24. Also during that meeting Defendant Post said there were steward positions available in California if anyone was interested. Plaintiffs took this as a threat to their jobs.

25. In the course of the meeting, Defendant Post also accused Plaintiff Dye of being the biggest instigator and told him he should do what is best for his family. Plaintiff Dye took this as further evidence that his job was being threatened.

26. Defendant Post later told Defendants Erskine and Perttunen that he had destroyed all records of this meeting.

27. On November 8, 2006, the day after the state gubernatorial election, Defendant Post told Plaintiff Dye that his position as Administrative Liaison Steward was being eliminated.

28. From November 12 through 15, 2006, Plaintiffs participated in bi-annual Continuing Education trip to Louisville, Kentucky.

29. On all previous trips Continuing Education trips Plaintiffs had been reimbursed for travel expenses.

30. When Plaintiffs returned from their 2006 bi-annual Continuing Education trip, their requests for travel reimbursements were denied.

31. Effective December 31, 2006, Plaintiff Dye's contract as Administrative Liaison Steward was non-renewed. He was reinstated as a State Steward.

32. As a result of this change in title, Plaintiff Dye's hours were cut by an average of one and a half work days per week. In addition, he lost access to a government-owned car and cell phone, and lost his entitlement to hotel, food, and mileage reimbursement for travel.

33. At about the same time Plaintiff Erskine's per diem wage was reduced by nearly half.

34. On January 4, 2007, Defendants White and Post met with Plaintiffs again. During that meeting, Defendants White and Post again accused Plaintiffs of influencing people to vote for Dick DeVos in the 2006 election. Defendants White and Post said that this undermined Defendant White's position as Commissioner, because she had been

appointed by Governor Granholm.

35. In the course of this meeting, Defendant White took away Plaintiffs' bank time. She claimed the policy was illegal, but said that bank time would be reinstated if Plaintiffs conformed to her ways and she felt Plaintiffs deserved it.

36. Also during the meeting, Defendant White stated that Plaintiffs were showing favoritism toward political candidates, and that this would affect their jobs.

37. At the same meeting, Defendant White accused Plaintiffs of writing letters and making phone calls to the governor's office and various state senators and representatives prior to and after her confirmation hearing regarding her behavior toward Plaintiffs in an effort to undermine her chances of being confirmed as the next Racing Commissioner.

38. At the same time, Defendants White and Post also told Plaintiffs to stop writing these letters because the "war was over" and Plaintiffs should conform to their views.

39. During the meeting Defendant Post also made Plaintiff Dye turn over his keys to the government-owned car he had previously been entitled to use.

40. In retaliation for their differing political views, Defendant White diminished Plaintiff's job duties as State Stewards, in contradiction to their contract with the Office of the Racing Commission. Defendant White stated this reduction in job duties and wages would remain in place until Plaintiffs conformed to her ways.

41. In addition, Defendants hired additional stewards, some from out of state, to cover the days that otherwise would have been assigned to the Plaintiffs. This resulted in loss of income in excess of $10,000 for each Plaintiff.

40. On or about March 27, 2007, Defendant Post told Plaintiffs Erskine and Dye that they would not be working at the Mt. Pleasant racetrack opening May 5, 2007, as they had in previous years. This would have resulted in Plaitniffs Erskine and Dye each losing eight

days of pay.

41. Instead, Defendant Post hired a new steward who was Defendant White's friend.

42. The new steward quit after visiting the race track, and Plaintiffs Erskine and Dye were called in to cover the time at the last minute.

43. On January 28, 2008, Defendants Post and White hired another new steward to cover hours previously worked by Plaintiffs.

44. On May 12, 2008, Defendant White posted five new job positions.

45. On December 28, 2008. Defendant Post significantly reduced the days Plaintiffs worked, claiming it was necessary because of the decreased number of races and the tough economic times.

46. On the same day, Defendant Post sent out an email announcing a new steward, Mr. Robert Coberley, had been hired to work weekend shifts previously assigned to Plaintiffs. The new steward was utilized to make policy development changes that had previously required Plaintiffs' input.

47. On January 30, 2009, Defendant Post emailed Plaintiffs Perttunen and Hall, reprimanding them for supposed failure to perform competently at a Steward's Investigative Hearing that occurred the day before. The email indicated that if Plaintiffs were unprepared again they would be suspended.

48. Ordinary procedures for Steward's Investigative Hearings do not require preparing written questions beforehand.

49. Plaintiff Perttunen came to the hearing with questions prepared and copies of the rules and policies, which he shared with Plaintiff Hall. During the hearing, Plaintiffs were continuously asking questions.

50. Immediately following the hearing Defendant Post thanked Plaintiffs Perttunen and Hall for their good job during the hearing.

51. On February 4, 2009, Defendant Post brought in another steward to work on the double-header race scheduled for February 6, 2009, rather than allowing Plaintiffs to employ their usual rotation. The additional steward did not normally work in the field, but did office jobs for which Plaintiffs had been told they were not qualified.

52. On April 1, 2009, Defendant Post informed Plaintiffs that Mr. Coberely would be working at Pinnacle Raceway despite the fact that two other, more experienced stewards were available for that time. Defendant Post gave no explanation as to why he had ignored experience and seniority in scheduling these races.

53. At the same time, Defendant Post implied that Plaintiffs' jobs may be in danger due to possible budget cuts in October.

54. In spite of this, Plaintiffs discovered that stewards from Ohio had been hired to cover these positions as well.

55. On April 2, 2009, Plaintiff Erskine confronted Defendant Post along with the other Plaintiffs, saying that it seemed as though the Plaintiffs were being pushed out. Defendant Post had no response. However, he admitted that Plaintiffs' jobs had turned in to part-time positions and repeated that they might end all together in October.

56. Defendant Department issued termination letters to Plaintiffs Dye and Erskine effective June 1, 2009.

57. Defendant Department's termination letters were contrary to its policy of preference for senority and in-state employees.

58. The actions of Defendant and its agents, representatives, and employees were intentional and in disregard of the rights and sensibilities of Plaintiffs.

59. Defendants' actions in limiting and terminating Plaintiffs' employment because of their constitutionally protected speech and political association abridged their rights to freedom of speech and political association in violation of the First and Fourteenth Amendments to the U.S. Constitution.

56. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiffs have sustained injuries and damages, including, but not limited to, the loss of earnings; mental and emotional distress; and humiliation and embarrassment. Loss of earnings has impacted the ability of Plaintiffs to afford health insurance and necessary dental and medical care.

### RELIEF

**PLAINTIFFS REQUEST** that this Court enter judgment against Defendants for the following relief:

1. Declaratory Relief:  A declaratory judgment pursuant to 28 USC 2201 declaring that Defendants' actions in limiting and terminating Plaintiffs' employment were unlawful and violated Plaintiffs First and Fourteenth Amendment rights to free speech and free association.

2. Injunctive Relief:  A preliminary and permanent injunction pursuant to Fed R Civ P 65 reinstating Plaintiffs Jeff Dye and Tammie Erskine and enjoining any further

retaliation against all Plaintiffs because of or on the basis of their constitutionally protected speech and political association.

3. Legal relief:

    a. Actual damages in the amount equal to the wages Plaintiffs lost due to the retaliatory conduct.

    b. An award of compensatory damages to Plaintiffs sufficient to compensate them for their mental anguish, embarrassment and humiliation, and damage to their professional reputation as a result of Defendants' actions.

    c. An award of punitive damages against Defendants Post and White, as a result of the reckless indifference with which they violated Plaintiffs' rights to free speech and political association.

    d. An award of the costs and disbursements of this action, including reasonable attorney fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 USC 1988(b).

4. An award of any other and additional legal or equitable relief to which Plaintiffs may be entitled.

Dated: August 3, 2009

/s/ Lisa C. Ward_____
**Lisa C. Ward (P38933)**
Attorney for Plaintiffs
2164 Univeristy Park Drive
Suite 260F
Okemos, Michigan 48864
(517) 347-8100
lisacward@aol.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Jeff Dye, Tammie Erskine,**  Civil Action #_____
**Patrick Hall, and Eric Pertunnun,**  Judge _____

        Plaintiffs,  **COMPLAINT AND**
 **JURY DEMAND**

v

**Michigan Department of
the Racing Commissioner,
Christine White, individually,
and in her official capacity as
Racing Commissioner, and Gary Post,
individually and his official capacity
as Deputy Commissioner,**

        Defendants.

_____/

**LISA C. WARD (P38933)**
Attorney For Plaintiffs
McGinty, Hitch, Housefield,
Person, & Yeadon, P.C.
601 Abbott Road
P.O. Box 2502
East Lansing, Michigan 48826
(517) 351-0280
_____/


**JURY DEMAND**

      Plaintiffs, Jeff Dye, et al., by and through their attorney, Lisa C. Ward, demand a trial by jury in this cause of action and state that they have paid the required jury fee.

Dated: August 3, 2009                  /s/ Lisa C. Ward
                                            **Lisa C. Ward (P38933)**
                                            Attorney for Plaintiffs
                                            2164 Univeristy Park Drive
                                            Suite 260F
                                            Okemos, Michigan  48864
                                            (517) 347-8100
                                            lisacward@aol.com